Mihael Edward Kennedy
NAME

#35377-098
PRISON NUMBER

Salisbury, Maryland
PLACE OF CONFINEMENT

33250 Old Ocean City Road, Parsonsburg MD 21849
ADDRESS

FILED

OCT 1 5 2007

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

# United States District Court
## Southern District Of California

Michael Edward Kennedy
(FULL NAME OF PETITIONER)

**Petitioner**

v.

United States of America
(NAME OF WARDEN, SUPERINTENDENT, JAILOR, OR AUTHORIZED
PERSON HAVING CUSTODY OF PETITIONER, E.G. PAROLE OFFICER)

**Respondent**

Civil No. _____
(TO BE FILLED IN BY CLERK OF U.S. DISTRICT COURT)

'07 CV 1996    JAH  RBB

**PETITION FOR WRIT OF HABEAS CORPUS**

UNDER 28 U.S.C. § 2241

1. Type of challenge (CHECK ONE):

    Parole

    Probation

    Loss of good-time credits

    Prison disciplinary hearing

    ✗ Other (specify): Violation of U. S. Constitution's  Suspension Clause, Article I, Section 9, clause 2 by AEDPA

Civ-69 (Rev. 9.97)

::ODMA\PCDOCS\WORDPERFECT\22832\1

2. Have you previously filed any petitions, applications, or motions with respect to the execution of your sentence in any court, state or federal?

    ✗ Yes    No

3. If your answer to 2 was "Yes," give the following information:

    (a)(1)    Name of court  United State District Court for the Southern District of California

        (2)    Nature of proceeding

            Second Successive 28 U.S.C §2255 motion to vacate conviction and sentence.

        (3)    Grounds raised

            Conviction Obtained By Evidence Gained Pursuant To Illegal Search & Seizure; Conviction Obtained By Failure Of The Prosecution To Disclose Evidence Favorable to Defendant; Denial Of Effective Assistance of Counsel; Illegal Prosecutor Misconduct

        (4)    Did you receive an evidentiary hearing on your petition, application or motion?

            Yes  ✗ No

        (5)    Result _____

        (6)    Date of result _____

    (b)    As to any second petition, application or motion give the same information:

        (1)    Name of court  United State District Court for the Southern District of California

        (2)    Nature of proceeding

            Third Successive 28 U.S.C §2255 motion to vacate conviction and sentence.

        (3)    Grounds raised

            Denial Of Right To Appeal & Access To The Courts; Conviction Obtained By Evidence Gained Pursuant To Illegal Search & Seizure; Conviction Obtained By Failure Of The Prosecution To Disclose Evidence Favorable to Defendant; Denial Of Effective Assistance of Counsel; Illegal Prosecutor Misconduct



>     (4)    Did you receive an evidentiary hearing on your petition, application or motion?
>            ☐ Yes  ☒ No
>
>     (5)    Result _____
>
>     (6)    Date of result _____

  (c)  Did you appeal, to the highest state court having jurisdiction, the result of action taken on any petition, application or motion?
>    (1)    First petition, etc.      ☒ Yes  ☐ No
>    (2)    Second petition, etc.   ☒ Yes  ☐ No

  (d)    If you did *not* appeal from the adverse action on any petition, application or motion, explain briefly why you did not:

4.  **State *concisely* every ground on which you claim that you are being held in violation of the constitution, law or treaties of the United States.  Summarize *briefly* the facts supporting each ground.**  If necessary, you may attach pages stating additional grounds and facts supporting same.
>      <u>CAUTION:  In order to proceed in the federal court, you must ordinarily first exhaust your available state court remedies as to each ground on which you request action by the federal court.  Moreover, if you fail to set forth all grounds in this petition, you may be barred from presenting additional grounds at a later date.</u>

    You should *raise in this petition all available grounds* on which you base your allegations that you are being held in custody unlawfully.



**A. Ground one:**

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) violates the United States Constitution's Suspension Clause, Article I, Section 9, clause 2, by acting to suspend and/or eliminate petitioner's ability to file a writ of habeas corpus - or obtain review of his second or successive motion to vacate his sentence in the lower courts - pursuant to 28 U.S.C. §2255 or 28 U.S.C. §2241.

**Supporting Facts** (state *briefly* without citing cases or law)

I.      **AEDPA's legislative history demonstrates that the amendments to Section 2255 were not designed to bar claims like Mr. Kennedy's <u>Brady</u>, <u>Bumper</u>, <u>Kyles</u> and <u>Strickland</u> claims from collateral review.**

AEDPA's "gate keeping" restrictions on successive petitions were enacted primarily to prevent federal courts from undermining the authority of state courts, governors, and legislators over the administration of the death penalty in their own states. The limitations imposed on habeas jurisdiction reflected the federal courts enduring respect for the State's interest in the finality of convictions that have survived direct review within the state court system and that federal habeas review of state convictions frustrates both the States' sovereign power to punish offenders and their good faith attempts to honor constitutional rights.

This case raises no such comity concerns, since Mr. Kennedy is a federal prisoner seeking to bring to the attention of the federal courts the fundamental miscarriage of justice and constitutional violations committed during his three trials and appellate process.                    [Continued on Attachment 4 -1]

**B. Ground two:**                    Not Used

**Supporting Facts** (state *briefly* without citing cases or law)

Not Used

In enacting the AEDPA, Congress sought to promote finality of judgments and to prevent prisoners from "abusing the writ" by filing repetitive habeas petitions in an attempt to stave off execution indefinitely. These new restrictions on successive petitions constitute a modified *res judicata* rule, a restraint on what is called in habeas corpus practice "abuse of the writ". Congress enacted these habeas corpus reforms "to curb the abuse of the statutory writ of habeas corpus."

Denying Mr. Kennedy the opportunity to seek post conviction review of his Brady, Bumper, Kyles and Strickland claims, which he was precluded from including in his direct appeal and first section 2255 motion by a government induced impediment, promotes no such finality interest. Nothing in AEDPA's legislative history indicates that Congress sought to preclude a federal prisoner from presenting for collateral review a constitutional claim he could not have included in his initial direct appeal or first section 2255 motion, and which supervening decisions from the Supreme Court confirm were violations of his constitutional due process rights.

In short, Mr. Kennedy's Brady, Bumper, Kyles and Strickland claims satisfies the criteria for a second successive section 2255 motion based on a retroactively-applicable Supreme Court decision, and this Court therefore should reach the merits of Mr. Kennedy's Brady, Bumper, Kyles and Strickland claims by finding the AEDPA's amended provisions of 28 U.S.C. §2255 render Section 2255 "inadequate and ineffective" to test the legality of his detention and allow review of his claims pursuant to 28 U.S.C. §2241.

II.    **If Mr. Kennedy's Brady, Bumper, Kyles and Strickland Claims do Not Fall Within the Successor Provisions of Section 2255, This Court Should Reach the Merits of Mr. Kennedy's Claims Pursuant to the Savings Clause of Section 2255.**

Even if this Court concludes that Mr. Kennedy's Brady, Bumper, Kyles and Strickland claims do not fall within the requirements for a successive motion under section 2255, it should nonetheless reach the merits of these claims

Civ-69 (Rev. 9/97) ::                                                ODMA\PCDOCS\WORDPERFECT\22832\1

because they fall within the "savings clause" of section 2255.  Section 2255 provides in relevant part:

> An application for a writ of habeas corpus in behalf of a prisoner who is authorized to apply for relief by motion pursuant to this section, shall not be entertained if it appears that the applicant has failed to apply for relief, by motion, to the court which sentenced him, or that such court has denied him relief, <u>unless it also appears that the remedy by motion is inadequate or ineffective to test the legality of his detention.</u>

28 U.S.C. §2255 (emphasis added).

Mr. Kennedy argues that if the Court finds that his <u>Brady</u>, <u>Bumper</u>, <u>Kyles</u> and <u>Strickland</u> claims do not satisfy the requirements for a successive motion under section 2255, it should then interpret the savings clause of section 2255 to allow him to file a petition pursuant to section 2241 raising those claims in the district court

At least three of the Courts of Appeals have adopted a test for application of savings clause of section 2255, requiring a petitioner to show that the conduct of which he was convicted is no longer criminal before obtaining relief.  Other of the Courts of Appeals, however, do not require a petitioner to show that he may have been convicted of a nonexistent offense in order to obtain relief under the savings clause.  In these circuits, Mr. Kennedy's <u>Brady</u>, <u>Bumper</u>, <u>Kyles</u> and <u>Strickland</u> claims would fall within the savings clause, allowing him to proceed with a section 2241 petition.

For example, the Second Circuit has interpreted the savings clause to encompass claims for which "the petitioner cannot, for whatever reason, utilize §2255, and in which the failure to allow for collateral review would raise serious constitutional questions."  Similarly, the Seventh Circuit has interpreted the savings clause to allow a petitioner "to seek habeas corpus only if he had no reasonable opportunity to obtain relief earlier judicial correction of a fundamental

defect in his conviction or sentence because the law changed after his first 2255 motion."

Thus, had Mr. Kennedy proceeded in the Second or Seventh Circuits, his claims likely would have fallen within the savings clause and he would have been allowed to pursue his Brady, Bumper, Kyles and Strickland claims by way of a petition under section 2241. Should the successive motion provisions of section 2255 be deemed to block this Court from reaching the merits of Mr. Kennedy's Brady, Bumper, Kyles and Strickland claims, it is clear that "remedy by [a successive section 2255] motion is inadequate or ineffective to test the legality of [the petitioner's] detention." 28 U.S.C. §2255.

Mr. Kennedy does not claim that section 2255 is inadequate or ineffective merely because he fails to fit within the successive motion provisions. Here, where a decision by the Supreme Court - rendered after the decision of Mr. Kennedy's direct appeal and initial section 2255 motion - is retroactively applicable and demonstrates conclusively that the Ninth Circuit Court of Appeals erred in denying his motion for authorization to file a successive motion to vacate his conviction over a constitutional challenge, Mr. Kennedy must be provided an avenue for substantive review of his claims.

Moreover, as a result of a government induced impediment to raising his claims, Mr. Kennedy has never had "an unobstructed procedural shot" at presenting his Brady, Bumper, Kyles and Strickland claims under section 2255 - or otherwise - to attempt to vacate his unconstitutional conviction and sentence.

Thus, if Mr. Kennedy is now precluded from presenting his Brady, Bumper, Kyles and Strickland claims by the requirements of section 2255, his claims must fall within the savings clause, entitling him to a review of the merits of his claims by this Court pursuant to section 2241.

And as previously indicated, filing a motion for relief under 28 U.S.C. §2241 in the District Court of Maryland, where Mr. Kennedy is currently confined, would be futile. At a minimum, this Court should examine this case to determine

whether the savings clause of section 2255 extends to fundamental constitutional violations in trial and sentencing or whether it must be more narrowly construed as available only where a petitioner can show that the conduct of which he was convicted has been rendered non-criminal by a change in the law. Without further examination by this Court, the Courts of Appeals will continue to apply differing standards resulting in unfair application of AEDPA across the country.

III.    **A Decision that Mr. Kennedy Cannot Obtain Relief for his Valid Brady, Bumper, Kyles and Strickland claims Under Either Section 2241 or Section 2255 Would Unconstitutionally Suspend the Writ of Habeas Corpus.**

Finally, if petitioner is without any access to federal substantive review of his Brady, Bumper, Kyles and Strickland claims this will create an extraordinary procedural quagmire that threatens an unnecessary confrontation between the statutory terms of AEDPA and the Suspension Clause of the Constitution[1]

After the government induced impediment was removed, Mr. Kennedy sought timely collateral review of his conviction and sentence to challenge the violation of his constitutional due process rights pursuant to a second successive section 2255.

Despite the obvious applicability of Landgraf to Mr. Kennedy's claims, however, and despite Mr. Kennedy's timely efforts to raise the issues now pursuant to section 2255 or 2241, the Ninth Circuit Court of Appeals interpreted the AEDPA amended provisions of section 2255 as preventing Mr. Kennedy from obtaining any federal review of his Brady, Bumper, Kyles and Strickland claims.

Such a ruling cannot be correct, as Mr. Kennedy must be allowed to seek relief either by motion under section 2255 or by petition for a writ of habeas

---

[1] The Suspension Clause provides: "The Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it." U.S. Const. Art. I, § 9, clause 2. (emphasis added).

corpus under section 2241.  To hold otherwise would violate the Suspension Clause.

The availability of the "Great Writ" holds a special place in American jurisprudence and was considered by the Founders as the highest safeguard of liberty and it is one of the decisively differentiating factors between our democracy and totalitarian government.  Access to the writ has been guaranteed by statute since passage of the Judiciary Act of 1789 and, despite considerable changes to the procedural mechanisms associated with federal collateral review, the fundamental right to test the constitutionality of a conviction and sentence has remained constant throughout the history of the Republic.

The Courts has always been careful to interpret changes to habeas corpus law (such as those enacted by AEDPA) as consistent with the fundamental constitutional mandate that the writ not be suspended.  And this last holds particularly true by the Supreme Court's refusing to construe AEDPA's "second or successive" petition language as applicable to claims previously dismissed for failure to exhaust state remedies on grounds that "implications for habeas practice would be far reaching and seemingly perverse" while further holding that AEDPA's amendments to section 2255 did not diminish the Supreme Court's authority to hear original habeas corpus petitions pursuant to section 2241.

The Supreme Court further noted that, throughout evolution of habeas corpus, changes to procedural rules have always "maintain[ed] the courts' freedom to issue the writ" as well as a finding that nowhere in the history of Section 2255 did it find any purpose to impinge upon prisoners' rights of collateral attack upon their conviction.

This is, of course, not the first time that the AEDPA's "gatekeeper" requirements have threatened a defendant's ability to obtain collateral review.  Most courts facing similar issues, however,  are careful to avoid a confrontation between section 2255's procedural requirements and the Suspension Clause.

Civ-69 (Rev. 9/97) ::                                          ODMA\PCDOCS\WORDPERFECT\22832\1

- [ Attachment 4 - 5 ] -

For example, relying upon the well settled proposition that a statute should be construed to avoid constitutional issues, the Second Circuit has recognized that "serious constitutional questions would arise if a person who... could not have effectively raised his claims.... At an earlier time had no access to judicial review." This finding was in accord with the Supreme Court's suggestion that the "inadequate and ineffective" language of §2255 operated as a sort of judicial pressure release that allows courts to avoid difficult constitutional questions that would arise if a petitioner were left with no procedural path down which to bring a claim. In it's finding, the Supreme Court thus indicated that the "inadequate and ineffective" clause can serve to protect the constitutionality of §2255 and, indeed, that it can help avoid premature resolution of serious constitutional questions if, by interpreting that clause to allow resort to habeas corpus, those issues are kept from arising.

The Seventh Circuit has also explained that denying collateral review can raise sensitive constitutional questions that should, if possible, be avoided:

> There remains the possibility that a claim in no sense abusive, because it could not have been raised earlier, yet not within the dispensation that [AEDPA's gate keeping provision] grants for the filing of some second or successive petitions, would have sufficient merit that the barring of it would raise an issue under the clause of the Constitution that forbids Suspending federal habeas corpus other than in times of rebellion or invasion.

The Seventh Circuit further recognized that a federal prisoner should be permitted to seek habeas corpus... if he had no reasonable opportunity to obtain earlier judicial correction of a fundamental defect in his conviction or sentence.

Refusing to address Mr. Kennedy's claims on the merits creates an unavoidable confrontation between AEDPA and the Suspension Clause. The Supreme Court avoided a similar conflict by holding that AEDPA's gatekeeper requirements do not prevent a prisoner from petitioning for an original writ of habeas corpus. Unlike the petitioner in that case, however, Mr. Kennedy has

Civ-69 (Rev. 9/97) ::                                    ODMA\PCDOCS\WORDPERFECT\22832\1

- [ Attachment 4 - 6 ] -

never had an opportunity to present his <u>Brady</u>, <u>Bumper</u>, <u>Kyles</u> and <u>Strickland</u> claims to any court, and without relief from this Court he will continue to serve concurrent life sentences without ever having obtained a ruling on the merits.

And this point holds particularly true when Justice Scalia recently noted in a related post-conviction context that "Perhaps precepts of fundamental fairness inherent in 'due process' suggests that a forum to litigate challenges... must be made available somewhere for the odd case in which the challenge could not have been brought earlier."  (emphasis omitted).

Permitting Mr. Kennedy's unconstitutional conviction and sentence to continue without any review of the merits of his <u>Brady</u>, <u>Bumper</u>, <u>Kyles</u> and <u>Strickland</u> claims creates other constitutional problems as well.  Interpreting AEDPA in a way that results in the denial of review to claims based on some collaterally retroactive decisions, but not to claims based on other collaterally retroactive decisions, violates the Due Process Clause of the Fifth Amendment to the Constitution.

Such an obviously unjust interpretation of AEDPA cannot be permitted to stand, particularly since it would allow the choice between life and death in some cases to turn on an arbitrary distinction that is almost surely the result of poor legislative drafting.

If Mr. Kennedy is prevented from presenting the merits of his <u>Brady</u>, <u>Bumper</u>, <u>Kyles</u> and <u>Strickland</u> claims to the courts, the legality of his conviction and sentence-- as well as the constitutionality of the AEDPA's gatekeeper provisions -- will be called into question.  The Ninth Circuit Court of Appeals denial of Mr. Kennedy's application to file a second or successive motion under section 2255 -- and its refusal to permit a habeas corpus action pursuant to section 2241 - threatens to permit Mr. Kennedy to be subjected to additional criminal penalties as well as continuing to serve concurrent life sentences which were obtained by violation of his constitutional due process rights.

The court's decision would also create another, separate constitutional violation by suspending the writ of habeas corpus.  This Court can avoid such a

constitutional violation by finding that the remedy under §2255 to be inadequate and ineffective in this case and reviewing the merits of Mr. Kennedy's Brady, Bumper, Kyles and Strickland claims pursuant to 28 U.S.C. §2241.

**IV.    The Supreme Courts Decisions in Brady, Bumper, Kyles, and Strickland Demonstrate that Mr. Kennedy's Conviction was Obtained in Violation of his Constitutional Due Process Rights.**

Brady, Bumper, Kyles and Strickland fatally undermine the decision by the Court of Appeals to reject and deny his motion for authorization to file a second successive motion to vacate his conviction.  There is no question, upon review of the merits of Mr. Kennedy's claims, that his conviction was the end product of violations of constitutional due process rights during three trials and the entire appellate process.

The Ninth Circuit Court of Appeals denied Mr. Kennedy's motion for authorization to file a second successive §2255 motion using reasoning that was squarely rejected by the Supreme Court in a prior case.  In that instance, the Supreme Court suggested, as previously indicated,  that the "inadequate and ineffective" language of §2255 operated as a sort of judicial pressure release to allow courts to avoid difficult constitutional questions from arising if a petitioner were left with no procedural path which to bring a claim and serve to protect the constitutionality of §2255 if,  by interpreting that clause to allow resort to habeas corpus,  those issues are kept from arising -- and this is such a case.

**A.    Mr. Kennedy attempted to challenge the consent search of his home and car and admission of evidence seized unsuccessfully at his trials.**

At each trial, Mr. Kennedy attempted to challenge the consent search of his home and car and admissibility at trial of the items seized.  Mr. Kennedy and his parents,  as joint-owners of the home, each asserted that they gave their consent only after Special Agents of the FBI claimed to be in possession of a search warrant.

In the face of such an announcement, it was the belief of both Mr. Kennedy and his parents that they had no legal right to refuse or object to the search once the officials conducting the search had claimed to have a search warrant. The situation was instinct with coercion - albeit colorably lawful coercion - and not one of voluntary waiver by Mr. Kennedy or family of their fundamental rights under the Fourth Amendment to the Constitution.

A number of items were seized from the home and car which were later introduced into evidence against Mr. Kennedy at each of his three trials. No search warrant was produced by the government at any of the three trials, and the district court made a credibility determination based upon testimony by each of the agents involved in the search that they had been given consent to search the home.

The governing Supreme Court case at the time held two very important points:

(1) that a search can not be justified as lawful on the basis of consent when that "consent" has been given only after the official conducting the search has asserted that he possesses a warrant, and;

(2) that the result can be no different when it turns out that the State does not even attempt to rely upon the validity of the warrant or fails to show that there was, in fact, any warrant at all.

The Supreme Court similarly held that any idea that a search can be justified by what it turns up was long ago rejected in our constitutional jurisprudence. It further found that a search prosecuted in violation of the Constitution is not made lawful by what it brings to light. It was also the Supreme Court's finding that, when a prosecutor seeks to rely upon consent to justify the lawfulness of a search, he has the burden of proving that consent was, in fact, freely and voluntarily given and this burden cannot be discharged by showing no more than acquiescence to a claim of lawful authority.

What Mr. Kennedy and his family would have done if Special Agents of the FBI had not said they had a warrant is, on this record, a hypothetical

Civ-69 (Rev. 9/97) ::                                        ODMA\PCDOCS\WORDPERFECT\22832\1
- [ Attachment 4 - 9 ] -

question about an imaginary situation that Mr. Kennedy nor his family never faced. There was a search warrant in this case, and it remains possible that this warrant was issued under circumstances meeting all the requirements of the federal constitution.

The end result is no different where the government did not even attempt to rely upon the validity of the warrant as in Mr. Kennedy's case - the lawfulness of the search still cannot be justified. However, as noted by the three trial transcripts in each of Mr. Kennedy's cases, the prosecution explicitly and repeatedly renounced any reliance on a search warrant.

Like all other parties to lawsuits, a prosecutor has an obligation to the courts and to other parties to present its claims at the earliest appropriate time, and to create an adequate record. And yet, there was a search warrant as previously indicated, and the prosecutor withheld it from Mr. Kennedy's defense counsel throughout three trials and entire appellate process -- because the officials conducting the search failed to execute and return it within the time period specified -- thus rendering the search of Mr. Kennedy's home and car invalid and all items seized therefore inadmissible.

The prosecutor chose to withhold the search warrant -- thereby precluding any meaningful challenge by Mr. Kennedy's defense counsel to the search -- and admit into evidence at each of the three trials those very same items he knew would otherwise be inadmissible. And the record is clear here that - without the items seized from Mr. Kennedy's home and car - the prosecution had no case to obtain an indictment with or carry to the jury.

Mr. Kennedy contended in his motions to the Court of Appeals for the Ninth Circuit that, in determining whether a criminal defendant was convicted "according to law," the test is not and cannot be simply whether a court finds credible the evidence against him. Crediting or discrediting evidence is the function of the trier of fact, in this case a jury.

The jury's verdict is a lawful verdict, however, only if it is based upon

evidence constitutionally admissible. When it is not, reversal rests on the oldest and most fundamental principal of our criminal jurisprudence -- that a defendant is entitled to put the prosecution to its lawful proof -- and there can be no doubt that Mr. Kennedy was not constitutionally proved guilty and, hence, there is no legally valid basis for imposition of a penalty upon him.

**B.    Brady and Kyles shows that the Court of Appeals erred in denying Mr. Kennedy's motion for authorization to file a successive motion to vacate his conviction and sentence.**

In it's landmark case, the Supreme Court declared that, regardless of the good faith or bad faith of the prosecution, the suppression of evidence favorable to the accused violates due process where the evidence is material to either guilt or punishment. In the more than thirty years since that decision, the scope of this mandate has been found to include both direct evidence and impeachment evidence which is favorable to the defendant.

This duty of disclosure, the Supreme Court has also held, is not limited to evidence in the actual possession of the prosecutor. Rather, it extends to evidence in the possession of the entire prosecution team, which includes investigative and other government agencies

A failure on the part of the government to disclose exculpatory material requires a new trial, or a new sentencing hearing, if disclosure of the evidence creates a reasonable probability of a different result. As the Supreme Court has explained, "the adjective is important," and "the question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence."

It is this very "confidence" which Mr. Kennedy calls into question when, at the very least, the suppressed material may quite possibly allowed the jury to acquit him of the rape and murder charges upon which his life sentences are

predicated. Mr. Kennedy's contention is further supported by the fact that he was convicted at a third trial after his first two trials ended with hung juries in what the Court of Appeals for the Ninth Circuit noted was "a close case" with time-of-death a pivotal issue.

As with government's release of the unexecuted search warrant, perhaps the most crucial materials disclosed pursuant to Mr. Kennedy's FOIA/PA request were several close-up crime scene photographs taken of the victim's face - none of which had ever been previously released. From a forensic standpoint, the close-up photographs were extremely relevant to Mr. Kennedy's defense because <u>there are no deposits of fly larvae in the victim's eyelids</u> -- and this fact pointed towards Mr. Kennedy's actual innocence given the pivotal issue of time-of-death.

Mr. Kennedy contends that -- had this exculpatory material not been withheld by the government -- the defense expert, Dr. Thomas Noguchi, Chief Medical Examiner for Los Angeles County, would have provided expert testimony that <u>fly larvae is deposited in the eyelids within four to six hours following death</u> -- testimony that was consistent with the defense theory on time-of-death. However, the jury was not given a opportunity to see the photographs nor hear Dr. Noguchi's testimony in order to form their own opinion.

Nor was the government's withholding of material limited solely to the search warrant and crime scene photographs. Other documents not released during Mr. Kennedy's three trials and appellate process included, but are not limited to:

(a)    Two separate FBI Investigative reports placing the approximate time-of-death as eight to ten hours in the case of Maria Lopez De Felix; and,

(b)    An FBI investigative page excerpt from Special Agent Kenneth A. Vardel that reflected:

    (1)    Blood grouping analysis of the suspect - Type "O" Positive.
    (2)    Blood grouping analysis of the victim - Type "A" Positive.
    (3)    Blood grouping analysis of the defendant - Type "A" Positive.

(c)     A United States Memorandum by the prosecutor, Thomas M.
Coffin, written several years <u>after</u> Mr. Kennedy's first §2255 motion
was denied by the Court of Appeals, to Lawrence Lippe, former
Chief of the Criminal Division, General Litigation and Legal Section,
U.S. Department of Justice, which specifically acknowledges
having directed Special Agent Jerry L. Barnett of the FBI to obtain
the search warrant for Mr. Kennedy's home.

Since there were no witnesses to the crime, Mr. Kennedy contends that
the sole evidence against him was the testimony of the three FBI agents and the
handling and interpretation of the physical evidence.  And, in the same vein, Mr.
Kennedy has been able to establish "cause and prejudice" sufficient to excuse
his failure to present the evidence in his direct appeal and first §2255 motion.
These points are important because Mr. Kennedy's claim differs in at least two
critical ways from a <u>Herrera</u>-type claim.

First, Mr. Kennedy's claim of innocence does not by itself provide a basis
for relief.  Instead, his claim for relief depends critically on the validity of his
<u>Brady</u>, <u>Bumper</u>, <u>Kyles</u> and <u>Strickland</u> claims.  Secondly, Mr. Kennedy's evidence
of innocence need carry less of a burden.  For Mr. Kennedy, the evidence must
establish sufficient doubt about his guilt to justify the conclusion that his
concurrent life sentences would be a miscarriage of justice <u>unless</u> his conviction
was a product of a fair trial.

If there were no question about the fairness of the trial, a <u>Herrera</u>-type
claim would fail unless the court is itself is convinced those new facts do
unquestionably establish Mr. Kennedy's innocence.  On the other hand, if the
court were merely convinced those new facts raised sufficient doubt about Mr.
Kennedy's guilt to undermine confidence in the result of the trial -- without
assurance that the trial was untainted by constitutional error -- Mr. Kennedy's
threshold showing of innocence would justify  a review of the a review of the
merits of the constitutional claims.

Under these standards there is little doubt that -- in light of all the
evidence <u>if</u> <u>known</u> <u>at</u> <u>the</u> <u>time</u> <u>of</u> <u>trial</u>  - it is more likely than not that no

reasonable juror would have found Mr. Kennedy guilty. And here, Mr. Kennedy
points out what he would otherwise hope be obvious: If there was reasonable
doubt existing in the minds of two separate juries to Mr. Kennedy's guilt -- there
is a reasonable probability that no reasonable juror would have found him guilty
beyond a reasonable doubt were it not for the government's suppression of
material evidence at the time.

The facts and evidence consequently also require this Court to conclude
that -- in their entirety -- the government's suppression of material evidence gives
rise to a presumption of reasonable likelihood that Mr. Kennedy's juries were
prevented constitutionally relevant evidence to his actual innocence of the
crimes.

### C.    Mr. Kennedy's Strickland claim flows from the validity of his Brady, Bumper and Kyles claims.

Mr. Kennedy's claim of innocence is both procedural and substantive. His
constitutional claims are based not only on innocence -- but also on the
contention that government induced interference and misconduct rendered his
defense counsel  ineffective as well as denied him the full panoply of protections
afforded to criminal defendants by the Constitution.

The test then is whether the suppression of material evidence precluded
the development of true facts in Mr. Kennedy's preparation and presentation
defense stages or resulted in the admission of false ones -- and on a material
question involving factual innocence -- the end result can only be the same. The
appropriate inquiry here thus focuses on the dispositive question of whether the
circumstances surrounding government suppression justifies a presumption that
Mr. Kennedy's conviction was insufficiently reliable to satisfy the Constitution.

There can be no question the suppression of material evidence contains
the same types of errors the Supreme Court has previously held to violate the
Fourth, Fifth, and Sixth Amendments to the Constitution. Nor can there be any
question that trial counsel for Mr. Kennedy would not have been prevented from

Civ-69 (Rev. 9/97) ::                                    ODMA\PCDOCS\WORDPERFECT\22832\1

- [ Attachment 4 - 14 ] -

providing him adequate assistance above the level induced by the government's suppression.

There can also be no question that trial counsel for Mr. Kennedy would have failed in exercising reasonable professional judgment in their representation -- nor failed to challenge the admissibility of evidence seized in what was an otherwise unconstitutional search and seizure.  Likewise, trial counsel for Mr. Kennedy would not have failed to challenge the disparity of blood types in the investigative notes nor failed to elicit the testimony of Dr. Thomas Noguchi relevant to the close-up crime scene photographs or that of Dr. Burton, the government's expert, during cross-examination.

Upon review of the record, this Court must conclude that these constitutional violations did occur and the government's conduct in this case may well have resulted in Mr. Kennedy receiving a fundamentally unfair trial.  The significant question remaining, then, is whether this Court elects to exercise its discretionary powers in a matter where the conviction has only been allowed to be sustained by virtue of the government's ability to suppress material evidence over a period of more than seventeen years.

## V.     Mr. Kennedy's Brady, Bumper, Kyles, and Strickland Claims Fall within the Successive Motion Provisions of Section 2255.

This Court must consider the merits of Mr. Kennedy's Brady, Bumper, Kyles and Strickland claims because his claims meet AEDPA's gate-keeping provisions for successive motions.  Specifically, paragraph 8 of 28 U.S.C. §2255 provides that a successive motion to vacate a conviction and sentence may be filed only under certain limited circumstances.  Two such circumstances are when the newly-raised claim demonstrates:

> (1)     newly discovered evidence that, if proven and viewed in the light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable fact finder would have found the [petitioner] guilty of the offense; or

(2)    a new constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unable.

28 U.S.C. §2255 ¶8.

## A.    This Court must provide a mechanism for these claims.

Mr. Kennedy's <u>Brady</u>, <u>Bumper</u>, <u>Kyles</u> and <u>Strickland</u> claims fall within this provision, as construed consistent with the retroactivity issues addressed by the Supreme Court in <u>Landgraf</u> and <u>Lindh</u>, and this Court therefore must consider his claims on the merits.  Moreover, the Supreme Court's decisions in <u>Brady</u>, <u>Bumper</u>, <u>Kyles</u> and <u>Strickland</u> demonstrate conclusively that Mr. Kennedy's conviction was obtained in violation of his constitutional right to due process.

This Court must provide a mechanism for these claims -- which prior to the Government's release of FOIA material after the trial and appellate process was completed, Mr. Kennedy had no opportunity to present -- to be  heard for the very first time.  And while the Supreme Court's jurisdiction to consider an original motion for habeas corpus under 28 U.S.C. §2255 is "inform[ed]" by the provisions of AEDPA, this Court does have the authority to find that 28 U.S.C. §2255 is an inadequate and ineffective remedy in this case when Mr. Kennedy's <u>Brady</u>, <u>Bumper</u>, <u>Kyles</u> and <u>Strickland</u> claims fall within the second successive motion provisions of 28 U.S.C. §2255.

Even if this Court were to conclude that Mr. Kennedy's <u>Brady</u>, <u>Bumper</u>, <u>Kyles</u> and <u>Strickland</u> claims fall outside the successive motion provisions of section 2255, it should nonetheless reach the merits of the claims pursuant to the "savings clause" of section 2255.  And as previously indicated, the Courts of Appeals have adopted different standards for applying the savings clause, and if Mr. Kennedy's motion for authorization had been filed in the Second Circuit, rather than the Ninth Circuit, he likely would have been allowed to proceed with his claim.  See supra III, above.

Finally, any construction of AEDPA that would preclude this Court from reaching the merits of Mr. Kennedy's <u>Brady</u>, <u>Bumper</u>, <u>Kyles</u> and <u>Strickland</u>

claims risks subjecting Mr. Kennedy to an unconstitutional suspension of the writ of habeas corpus.

This petition thus presents the exceptional circumstances in which a supervening decision of the Supreme Court -- which is retroactively applicable on collateral review pursuant to the Supreme Court's decision in Landgraf -- has squarely conflicted with a holding of the Ninth Circuit Court of Appeals rejection of an individual's valid claim of constitutional violations in the process leading to file a successive motion relies on a questionable construction of a provision of his concurrent life sentences.  This petition presents the further exceptional circumstances that the rejection by the Court of Appeals to petitioner's attempt to AEDPA  that acts to:

(1)    suspend the writ of habeas corpus by eliminating other avenues of judicial review previously available under pre-AEDPA standards and has met the factually or legally *prima facie* requirements for filing a successive motion, and;

(2)    give the government a "free pass" or amnesty for violations of the constitution committed in cases prior to the AEDPA's enactment.

**B.    A Retroactive Application of AEDPA Falls Within The Ex Post Facto Prohibition.**

In the same vein, Mr. Kennedy contends that to fall within the ex post facto prohibition, a law must be retrospective -- that is, it must apply to events occurring before its enactment -- and it must disadvantage the offender affected by it, by altering the definition of criminal conduct or increasing the punishment for the crime.  And there is also no doubt that such a retroactive application of AEDPA to Mr. Kennedy's case does attach new legal consequences.

Indeed, the AEDPA now subjects Mr. Kennedy to Title I of the Adam Walsh Act, entitled the Sex Offender Notification Act ("SORNA"), which created the new federal offense of failure to register under SORNA, 18 U.S.C. §2250, and which carries a penalty of up to ten years in prison for a first time offense.  An offender who commits a crime of violence during a period when he also fails to register is subject to a punishment of five to thirty years in addition to and

Civ-69 (Rev. 9/97) ::                                              ODMA\PCDOCS\WORDPERFECT\22832\1

- [ Attachment 4 - 17 ] -

consecutive to the penalty he receives for failure to report.

A number of circuit courts have now, however, stressed the importance of analyzing any impermissible retroactive effect of applying the AEDPA provisions to a second successive petition filed after enactment of the AEDPA when the first was filed before its enactment. This analysis is pivotal when a petitioner could have met the pre-AEDPA standard for filing second successive petitions, but is currently unable to meet the AEDPA standard.

In addressing the issue of retroactivity, the Supreme Court held that where a statute did not clearly mandate an application with retroactive effect, a court had to determine whether applying it as its terms ostensibly indicated would have genuinely retroactive effect; if so, the judicial presumption against retroactivity would bar its application. The Supreme Court further found that whenever a new statute on its face could apply to the litigation of events that occurred before it was enacted, there are only two alternative sources of rules to determine its ultimate temporal reach: either an "expressed command" from Congress or application of the Supreme Court's default rule, which states:

> "[w]hen a case implicates a federal statute enacted after the events in suit, the court's first task is to determine whether Congress has expressly prescribed the statute's proper reach. If Congress has done so, of course, there is no need to resort to judicial default rules. When, however, the statute contains no such express commands, the court must determine whether the new statute would have retroactive effect... If the statute would operate retroactively, our traditional presumption teaches that it does not govern absent clear congressional intent favoring such a result."

The language quoted disposed of the question whether the practice of applying the law as it stands at the time of decision represented a retreat from the occasionally conflicting position that retroactivity in the application of new statutes is disfavored. The answer given by the Supreme Court was no, and the presumption against retroactivity was reaffirmed in the traditional rule requiring retroactive application be supported by a clear statement.

Civ-69 (Rev. 9/97) ::                                                    ODMA\PCDOCS\WORDPERFECT\22832\1

Moreover, the concurring opinion of Justice Scalia in that particular case raises the additional cogent point that it was never the stated nor implied intent of Congress to give the government a "free pass" or amnesty for violations of the Constitution committed in cases prior to enactment of AEDPA. Title 28 U.S.C. §2253(c)(2) further supports this contention by Congress recognizing the continued existence of the denial of constitutional rights.

In determining whether a statute's terms would produce a retroactive effect, however, and in determining a statute's temporal reach generally, the Supreme Court found the normal rules of construction apply. Although the default rule would deny application when a retroactive effect would otherwise result, other construction rules may apply to remove even the possibility of retroactivity -- as by rendering the statutory provision wholly inapplicable to a particular case -- the recognition of a negative implication would do here.

In short, the statute reveals Congress's intent to apply the amendments to chapter 153 only to such cases as were filed after the statute's enactment -- except where chapter 154 otherwise makes select provisions of chapter 153 applicable to pending cases. Title I of the Act stands more or less independent of the Act's other titles in providing for the revision of federal habeas practice and does two main things.

First, in §§101-106, it amends §2253 and §§2253-2255 of chapter 153 of Title 28 of the United States Code, governing all habeas corpus proceedings in the federal courts. Then, for habeas proceedings against a State in capital cases, §107 creates an entirely new chapter 154 with special rules favorable to the state party, but applicable only if the State meets certain conditions, including provision for appointment of post-conviction counsel in state proceedings. In §107(c), the Act provides that "Chapter 154... Shall apply to cases pending on or after the date the date of enactment of this Act."

The Supreme Court found this provision of §107(c), expressly applying chapter 154 to all cases pending at enactment, as indicating implicitly that the

amendments to chapter 153 were assumed and meant to apply to the general run of habeas cases only when those cases had been filed after the date of the Act. The significance of this provision for application to pending cases becomes apparent when one realizes that when chapter 154 is applicable, it will have substantive as well as purely procedural effects.

If chapter 154 were merely procedural in a strict sense say, setting deadlines for filing and disposition, the natural expectation would be that it would apply to pending cases. Here, the Supreme Court noted that such procedural changes "may often be applied in suits arising before their enactment without raising concerns about retroactivity."

But chapter 154 does far more, for in its revisions of prior law to change standards of proof and persuasion in a way favorable to a state, the statute goes beyond "mere" procedure to affect substantive entitlement to relief. In discussing this point, the Supreme Court did not speak to the rules for determining the temporal reach of such a statute -- having no need to do so.

The Supreme Court did hold, however, that while the statute might not have a true retroactive effect -- neither was it clearly "procedural" so as to fall within the Supreme Court's express, albeit qualified, approval of applying such statutes to pending cases. Since the default rule was the Supreme Court's latest word on the subject when the AEDPA was passed, Congress could have taken the opinion's cautious statement about procedural statutes and its silence about the kind of provisions exemplified by the new §2254(d) as counseling the wisdom of being explicit if it wanted such a provision to be applied to cases already pending or to events occurring before enactment of AEDPA.

And while the terms of §107(c) may not amount to the clear statement required for a mandate to apply a statute in the disfavored retroactive way, they do serve to make it clear as a general matter that chapter 154 applies to pending cases only when its terms fit those cases at the particular procedural points they have reached. As a consequence to that, of course, is there may well be difficult

issues, and it may be that application of the default rule will be necessary to settle some of them as here in the case at bar.

This last would seem to hold particularly true given the near-prohibition against the filing of successive petitions now mandated by the AEDPA, and the irreversible consequences that flow from the rejection of a capital habeas petitioner's first petition.  In such light, it is not surprising the Supreme Court has stressed that a capital habeas petitioner is entitled to a full consideration of all of his or her claims in his or her first petition -- and this point is extremely important because Mr. Kennedy claims in his first §2255 were never fully adjudicated on the merits due to a government induced impediment.

It holds equally as true here that the Ex Post Facto Clause contained in Article I, §9, clause 3, and §10, clause 1,of the United States Constitution, forbids the passage and application of laws that retroactively alter the definition of crimes or increase the punishment for criminal acts.  And in addressing this, the Supreme Court established a two-part test to assess claims by finding that a law violates the Ex Post Facto Clause if it is:

    1.)    retroactive -- it applies to events occurring before its enactment; and,

    2.)    detrimental -- it produces a sufficient risk of increasing the measure of punishment attached to the covered crimes.

The inquiry, however, looks to the challenged provision, and not to any special circumstances that may mitigate its effect on the particular individual. The Supreme Court also specified that the statutory procedures should be compared *in toto* to determine if the new may be fairly characterized as more onerous.  The  Court was also careful to explain that there is no single formula for identifying Ex Post Facto violations.  Indeed, the inquiry itself must be a matter of degree.

It is for this reason, when engaging in Ex Post Facto analysis, a federal court accepts the meaning ascribed to the statute by the highest court.  And this holds true in the context of habeas review .  Under this reasoning, it is therefore

clear Mr. Kennedy's second successive §2255 motion precluded any retroactive application of AEDPA -- and also clear the default rule undeniably applies to both Mr. Kennedy's case and serve to confirm the unconstitutionality of a retroactive application where the Supreme Court has stressed the need for the courts to identify the "relevant retroactivity event" to which new legal consequences attach.

In sum, Mr. Kennedy contends the AEDPA, including its §2244(d)(1) statute of limitation, nor doctrine of *res judicata* nor abuse of the writ, apply to his second successive §2255 motion when the claims raised tie directly back to his original federal habeas proceedings. There is similarly no doubt the application of AEDPA to Mr. Kennedy's case thus would apply to those events occurring before its enactment -- nor no doubt it disadvantages Mr. Kennedy by increasing the punishment for the crime by subjecting Mr. Kennedy to the criminal penalties imposed by Title I of the Adam Walsh Act and 18 U.S.C. §2250.

This Court is therefore in the position to not only avoid a confrontation between AEDPA and the Suspension Clause -- but to also correct an inequity of injustice by reviewing the merits of Mr. Kennedy's claims pursuant to 28 U.S.C. §2241.

## CONCLUSION

For the foregoing reasons, Mr. Kennedy respectfully requests that his petition be granted by this court finding that the remedy under 28 U.S.C. §2255 to be inadequate and ineffective in this case and reviewing the merits of Mr. Kennedy's claims pursuant to 28 U.S.C. §2241.

Respectfully submitted,

Michael E. Kennedy

Date: October 12th, 2007.

Civ-69 (Rev. 9/97) ::                                          ODMA\PCDOCS\WORDPERFECT\22832\1

Not Used

**C.    Ground three:**

Not Used

**Supporting FACTS** (state *briefly* without citing cases or law):

Not Used

Not Used

**D. Ground four:**

Not Used

**Supporting FACTS** (state *briefly* without citing cases or law):

Not Used

::ODMA\PCDOCS\WORDPERFECT\22832\1

Not Used

5. If any of the grounds listed in 4A, B, C, and D were not previously presented in any other court, state or federal, state briefly what grounds were not presented, and give your reasons for not presenting

them:

Not Applicable

6. Do you have any petition or appeal now pending in any court, either state or federal, as to the execution of sentence under attack?
☐ Yes  ☒ No

7. Give the name and address, if known, of each attorney who represented you in the following stages of the execution of sentence attacked herein:

    (a)    In any post-conviction proceeding <u>Judy Clarke, Suite 900, 225 Broadway, San Diego, CA., 92101, and Harold I. Glaser, Suite 1717, 201 North Charles Street, Baltimore, MD., 21201-4121</u>

    (b)    On appeal from any adverse ruling in a post-conviction proceeding <u>Judy Clarke, Suite 900, 225 225 Broadway, San Diego, CA., 92101 & Harold I. Glaser, Ste 1717, 201 North Charles St, Baltimore, MD</u>

Wherefore, petitioner prays that the Court grant petitioner relief to which he may be entitled in this proceeding.

_____
        SIGNATURE OF ATTORNEY (IF ANY)

I declare under penalty of perjury that the foregoing is true and correct. Executed on

<u>10/12/2007</u>        _____
   (DATE)           SIGNATURE OF PETITIONER

Civ-69 (Rev. 9/97)              **-7-**        ::ODMA\PCDOCS\WORDPERFECT\22832\1

# FORM D

## PROOF OF SERVICE

# PROOF OF SERVICE BY MAIL

### (Fed R. Civ. P.5; 28 U.S.C. §1746)

I, <u>Michael Edward Kennedy</u>, declare:

I am over 18 years of age and a party to this action. I am a resident of Salisbury, Maryland, in the county of Wicomico. My address is: 33250 Old Ocean City Road, Salisbury, Maryland 21849. On October 12th, 2007, I served the attached petition for writ of habeas corpus, pursuant to 28 U.S.C. §2241, on the parties herein by placing true and correct copies thereof, enclosed in a sealed envelope, with postage prepaid, in the United States mail in a deposit box so provided by the United States Postal Service in the above-named city where I am presently located. The envelope was addressed as follows:

> United States Attorney for the
> Southern District of California
> Appellate Division
> 880 Front Street, Room 6293
> San Diego, California 92101-8893

Pursuant to 28 U.S.C. §1746, I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on this 12th day of October, 2007.

Michael E. Kennedy

> Michael E. Kennedy
> 33250 Old Ocean City Road
> Salisbury, Maryland 21849

Civ-69 (Rev. 9/97)

::ODMA\PCDOCS\WORDPERFECT\22832\1

JS44
(Rev. 07/89)

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE SECOND PAGE OF THIS FORM.)

**FILED**

**OCT 1 5 2007**

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

**I (a) PLAINTIFFS**

MICHAEL EDWARD KENNEDY

**DEFENDANTS**

UNITED STATES OF AMERICA

**(b) COUNTY OF RESIDENCE OF FIRST LISTED** Wicomico, MD
**PLAINTIFF**
(EXCEPT IN U.S. PLAINTIFF CASES)

**COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT** _____
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

**(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)**

MICHAEL EDWARD KENNEDY
33250 OLD OCEAN CITY ROAD
PARSONSBURG, MD 21849
35377-098

**ATTORNEYS (IF KNOWN)**

'07 CV 1996    JAH RBB

**II. BASIS OF JURISDICTION (PLACE AN x IN ONE BOX ONLY)**

☐ 1 U.S. Government Plaintiff

☐ 3 Federal Question
(U.S. Government Not a Party)

☒ 2 U.S. Government Defendant

☐ 4 Diversity (Indicate Citizenship of Parties in Item III

**III. CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN X IN ONE BOX**
**(For Diversity Cases Only)    FOR PLAINTIFF AND ONE BOX FOR DEFENDANT**

| | PT | DEF | | PT | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐1 | ☐1 | Incorporated or Principal Place of Business in This State | ☐4 | ☐4 |
| Citizen of Another State | ☐2 | ☐2 | Incorporated and Principal Place of Business in Another State | ☐5 | ☐5 |
| Citizen or Subject of a Foreign Country | ☐3 | ☐3 | Foreign Nation | ☐6 | ☐6 |

**IV. CAUSE OF ACTION (CITE THE US CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY).**

## 28 U.S.C. 2241

**V. NATURE OF SUIT (PLACE AN X IN ONE BOX ONLY)**

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reappointment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury-Medical Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | | ☐ 625 Drug Related Seizure of Property 21 USC881 | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 365 Personal Injury - Product Liability | | ☐ 820 Copyrights | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment &Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | | ☐ 640 RR & Truck | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | ☐ 650 Airline Regs | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 153Recovery of Overpayment of Veterans Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities Exchange |
| | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 690 Other | ☐ 862 Black Lung (923) | |
| ☐ 160 Stockholders Suits | | ☐ 380 Other Personal Property Damage | **LABOR** | ☐ 863 DIWC/DIWW (405(g)) | ☐ 875 Customer Challenge 12 USC |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence Habeas Corpus | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | | ☐ 740 Railway Labor Act | | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Electmant | ☐ 443 Housing/Accommodations | ☐ 530 General | ☐ 790 Other Labor Litigation | ☐ 871 IRS - Third Party 26 USC 7609 | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Tort to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | ☐ 791 Empl. Ret. Inc. Security Act | | |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | ☒ 540 Mandamus & Other | | | ☐ 950 Constitutionality of State |
| ☐ 290 All Other Real Property | | ☐ 550 Civil Rights | | | ☐ 890 Other Statutory Actions |
| | | ☐ 555 Prisoner Conditions | | | |

**VI. ORIGIN (PLACE AN X IN ONE BOX ONLY)**

☒ 1 Original Proceeding  ☐ 2 Removal from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify)  ☐ 6 Multidistrict Litigation  ☐ 7 Appeal to District Judge from Magistrate Judgment

**VII. REQUESTED IN COMPLAINT:**
☐ CHECK IF THIS IS A CLASS ACTION UNDER f.r.c.p. 23

DEMAND $

Check YES only if demanded in complaint:
JURY DEMAND: ☐ YES ☐ NO

**VIII. RELATED CASE(S) IF ANY (See Instructions):**    JUDGE _____    Docket Number _____

DATE  October 15, 2007

SIGNATURE OF ATTORNEY OF RECORD

#143690    $5 - 10   10/10/07

**UNITED STATES
DISTRICT COURT**
SOUTHERN DISTRICT OF CALIFORNIA
SAN DIEGO DIVISION

**# 143540   — KD
* * C O P Y * *
October 16. 2007
10:44:49**

**Habeas Corpus**
USAO #.: HABEAS; 07CV1996
Judge..: JOHN A HOUSTON
Amount.:                    $5.00 MO
Check#.: 92692567901


**Total—>  $5.00**


FROM: HABEAS
      KENNEDY V. USA